IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMY HOLLINGER, | : Civ. No. 1:24-CV-1833 |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : (Chief Magistrate Judge Bloom) |
| FRANK BISIGNANO, | : |
| Commissioner of Social Security,[1] | : |
| | : |
| Defendant. | : |

MEMORANDUM OPINION

## I. Introduction

Amy Hollinger filed a Title II application for a period of disability and disability insurance benefits on July 25, 2019,[2] and added a Title XVI application for supplementary security income on July 31, 2019.[3] Following an initial hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Hollinger was not disabled from her alleged

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Frank Bisignano is substituted as the defendant in this suit.

[2] Tr. 428-31.

[3] Tr. 432-38.

onset date of disability of September 20, 2018, through May 24, 2021, the date of the ALJ's decision.[4]  On February 15, 2022, the Appeals Council remanded the matter back to an ALJ for reconsideration.[5]  Hollinger had another hearing before an ALJ,[6] and following that hearing, the ALJ published her decision finding that Hollinger was not disabled from her alleged onset date of disability of September 20, 2018, through September 19, 2023, the date of that decision.[7]

Hollinger now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence.  After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'"[8] we conclude that substantial evidence supported the ALJ's findings in this case.  Therefore, we will affirm the decision of the Commissioner denying this claim.

---

[4] Tr. 219-30.

[5] Tr. 237-40.

[6] Tr. 40-77.

[7] Tr. 17-30.

[8] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

## II.    <u>Statement of Facts and of the Case</u>

On July 25, 2019, Hollinger applied for disability insurance benefits, and later added an application for supplemental security income, citing an array of physical and mental impairments, including osteoarthritis, degenerative disc and joint disease, congenial cervical fusion, cervical spurs, pinched nerves from C6 to C7, fibromyalgia, coronary artery disease, high blood pressure, irritable bowel syndrome ("IBS"), sleep apnea, anxiety, depression, post-traumatic stress disorder ("PTSD"), asthma, high cholesterol, carpel tunnel, cubical tunnel syndrome, obesity, rhinitis, celiac disease, and lumbar stenosis.[9] Hollinger was 41 years old at the time of the alleged onset of disability, had at least a high school education, and had past employment as a housekeeper, bartender, school bus driver, and waitress.[10]

With respect to the alleged physical impairments the record revealed the following: In February of 2018, Hollinger appeared for a follow-up visit for her bypass surgery that occurred in 2016.[11] Treatment

---

[9] Tr. 472, 489.
[10] Tr. 28-29.
[11] Tr. 833.

notes indicated her coronary disease and hypertension were controlled.[12] A few months later, Hollinger reported concerns of chest tightness, high blood pressure, and hypertension.[13]  A stress test revealed normal results with no ischemia noted and her echocardiogram was unrevealing.[14] Hollinger's symptoms improved after modifications were made to her roughly 20 prescribed medications.[15]

In May of 2018, Hollinger presented to Dr. Francis Gallagher at Lebanon Internal Medicine Association, who noted her recent hypertension and bradycardia episodes.[16]  Dr. Gallagher further noted that Hollinger's fibromyalgia was stable and detailed her treatment, which included duloxetine in combination with pregabalin, tizanidine, a narcotic regimen, and injections as needed.[17]  Hollinger reported overall improvement with her pain.[18]

---

[12] Tr. 835.
[13] Tr. 841.
[14] Tr. 848.
[15] Tr. 859-61, 885.
[16] Tr. 856.
[17] *Id.*
[18] *Id.*

4

In November of 2018, Hollinger returned to Dr. Gallagher for complaints of chronic widespread pain.[19]  Hollinger reported significant pain involving the cervical spine, which radiated into her upper back and extremities causing paresthesias in her forearms.[20]  Dr. Gallagher noted multiple tender fibromyalgia trigger points and increased her pregabalin from 76 mg to 150 mg twice a day.[21]  He ordered an X-ray of the cervical spine, which showed congenital fusion of C6-7 and moderate spondylitic hypertrophy or foraminal narrowing at C5-6 level on each side.[22]  Six months later, Dr. Gallagher increased Hollinger's duloxetine from 90 mg to 120 mg per day after she reported no change in her symptoms.[23]

From 2019 to 2023, Hollinger underwent multiple procedures to address her pain, including medial branch blocks and radio frequency ablations.[24]  In August of 2019, an MRI of Hollinger's cervical spine

---

[19] Tr. 691, 908.

[20] *Id.*

[21] Tr. 692, 909.

[22] Tr. 694.

[23] Tr. 698, 964.

[24] Tr. 1017, 1031, 1042, 1054, 1064, 1159, 1169, 1448, 2804, 2836, 2838, 2934, 3021, 3069, 3122, 3141, 3389.

5

showed cervical degenerative disc disease/osteoarthritis.[25]  Hollinger was prescribed physical therapy, which only provided temporary relief of her symptoms.[26]  However, treatment records indicate Hollinger's pain improved from the ablation therapy.[27]

Hollinger appeared for a follow-up visit for her obstructive sleep apnea in September of 2020, where she reported having trouble with her CPAP mask at night.[28]  Hollinger received a new mask, which she indicated worked well for her and denied daytime sleepiness.[29]  After a July 2021 sleep study, Hollinger switched from a CPAP to BiPAP.[30]

In November of 2020, Hollinger reported worsening symptoms of pain in her neck and lower back.[31]  Dr. Gallagher increased her pregabalin dosage to 225 mg twice a day.[32]  In May of 2021, Hollinger continued complaints of back pain.[33]  Updated X-rays of the cervical

---

[25] Tr. 1172-73, 1240.
[26] Tr. 1431, 1437, 1461.
[27] Tr. 1939, 1943, 2625, 2662.
[28] Tr. 1822.
[29] Tr. 2341-42.
[30] Tr. 2321.
[31] Tr. 1939.
[32] Tr. 1940.
[33] Tr. 2453.

through lumbar regions were ordered and revealed no significant changes.[34]  In August of 2021, Hollinger reported that her back pain was slightly improved from her last visit and that she did not have any neck and shoulder pain.[35]

In February of 2022, Hollinger continued reports of head-to-toe chronic pain despite unchanged imaging results.[36]   However, her symptoms began to improve later that year, and her physical exams demonstrated she had normal range of motion, strength, and sensation in all extremities, and normal coordination and gait throughout the relevant period.[37]   In August of 2022, Hollinger reported positive improvement in her pain.[38]  Treatment notes in November of 2022 also indicate Hollinger had "major improvement in her symptoms."[39]  Indeed, Hollinger rated her pain a three out of ten on May 10, 2023.[40]

---

[34] Tr. 2454-60.
[35] Tr. 2463.
[36] Tr. 2466-68.
[37] Tr. 1939, 2087-88, 2096, 2108, 2208, 2486, 2872, 3106-07, 3481, 3567.
[38] Tr. 2475.
[39] Tr. 2481-82.
[40] Tr. 2815.

The record also indicates that Hollinger suffered from obesity during the relevant period, having a body mass index that varied from 38.9 to 48.47 and pursuing bariatric surgery during this time.[41]

With respect to Hollinger's alleged mental impairments, Hollinger was diagnosed with depression in or around 2016.[42]  In June of 2018, Hollinger reported her depression was stable.[43]  In 2019, Hollinger indicated she did not struggle with having little interest in doing things and did not feel down, depressed, or hopeless.[44]  From 2020 to 2022, Hollinger reported worsening symptoms of her depression due to increased stress stemming from the COVID-19 pandemic, caring for her parents, and relationship issues.[45]  However, treatment records during this period also convey that Hollinger denied anxiety, depression, and suicidal thoughts.[46]  Her medications were increased, which provided

---

[41] Tr. 839, 874, 894, 904, 934, 949, 2157, 2190, 2513, 2581, 2600, 2644, 2683, 2687, 2817.
[42] Tr. 613.
[43] Tr. 868-69.
[44] Tr. 959, 1887.
[45] Tr. 2519, 2532, 2534, 2539, 2559, 2567, 2580, 2643, 2669, 2682-83.
[46] Tr. 1856, 1872, 2197, 2207, 2220, 2231, 2499, 2906, 2916, 2925, 2937, 2947, 2957, 2966, 2978, 2987, 2996, 3005, 3014, 3024, 3042, 3053, 3061, 3072, 3082, 3091, 3104, 3115.

some improvement in her symptoms.[47]  In November of 2022, Hollinger

reported she was doing well on her medication.[48]  In May of 2023,

Hollinger's depression was reported as stable.[49]

It is against this factual backdrop that the ALJ conducted a hearing

in Hollinger's case on August 8, 2023.[50]  Hollinger and a vocational expert

("VE") both testified at this hearing.  Hollinger testified about her work

history, increased treatment and medications, and the increased

symptoms relating to her weight gain, migraines, IBS, COPD, sleep

apnea, fatigue, and depression.[51]  The VE in his testimony first classified

Hollinger's past work, then answered hypothetical questions about an

individual with Hollinger's background and specific types of limitations.[52]

Following this hearing, on September 19, 2023, the ALJ issued a

decision denying Hollinger's application for benefits.[53]  In that decision,

the ALJ first concluded that Hollinger met the insured status

---

[47] Tr. 2690, 2703.
[48] Tr. 2776, 2794.
[49] Tr. 2798, 2818.
[50] Tr. 40-77.
[51] Tr. 50-63.
[52] Tr. 63-74.
[53] Tr. 17-30.

requirement through December 31, 2018.[54]  At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found Hollinger suffered from the following severe impairments: osteoarthritis/degenerative joint disease, cervical degenerative disease, fibromyalgia, obesity, obstructive sleep apnea, asthma, and coronary artery disease.[55]  At Step 3 the ALJ determined that Hollinger did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.[56]

Between Steps 3 and 4 the ALJ concluded that Hollinger retained the following residual functional capacity to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can stand/walk for only 4 hours and sit for only 4 hours during an 8-hour workday; can occasionally climb ramps/stairs, balance, stoop, kneel, and crouch; can never crawl or climb ladders/ropes/scaffolds; must avoid concentrated exposure to extreme cold, heat, wetness, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards such as unprotected machinery; can tolerate no more than moderate noise intensity levels; and should avoid work outdoors in bright sunshine and work with bright or flickering lights as would be experienced in welding or cutting metals.[57]

---

[54] Tr. 20.

[55] Tr. 20-22.

[56] Tr. 22-23.

[57] Tr. 23-28.

In reaching this RFC determination, the ALJ made the following findings: the ALJ considered Hollinger's reported, subjective symptoms, and found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"[58]

The ALJ considered evidence of Hollinger's activities of daily living, and found that, taken together, they "suggest the claimant has retained a greater capacity for exertional activities than alleged" as described in the RFC.[59]   The ALJ then embarked on a review of the medical record evidence she found supported those findings.[60]

The ALJ next considered the medical opinions on record.[61]   She was persuaded by the opinions of the state agency medical consultants, Drs. Hong Park and Lelwellyn Raymundo, who opined that Hollinger was

---

[58] Tr. 24.
[59] Tr. 24-25.
[60] Tr. 25-27.
[61] Tr. 27-28.

11

capable of a range of light exertional work activity involving postural and environmental limitations.[62]  The ALJ found the opinions to be consistent with the physical examination records and Hollinger's admissions regarding her retained capacity for daily living.[63]

The ALJ also found a mental health opinion of the state agency psychological consultant, Dr. Edward Jonas, to be persuasive.[64]  Dr. Jonas opined that Hollinger's mental impairment was non-severe given she had only mild limitations in any area of the work-related cognitive, social, executive, or adaptive functioning.[65]

The ALJ then found at Step 4 that Hollinger could not perform her past work but, at Step 5, found that she could perform other occupations with jobs that existed in significant numbers in the national economy, such as marker, information clerk, and garment sorter.[66]  Having reached these conclusions, the ALJ determined that Hollinger had not met the

---

[62] Tr. 28, 168-73, 205-12.
[63] Tr. 28.
[64] *Id.*
[65] Tr. 166-67.
[66] Tr. 28-29.

demanding showing necessary to sustain this claim for benefits and denied this claim.

This appeal followed.[67]   On appeal, Hollinger challenges the adequacy of the ALJ's decision arguing it is not supported by substantial evidence.[68]  As discussed in greater detail below, having considered the arguments of counsel and carefully reviewing the record, we conclude that the ALJ's decision should be affirmed, and this appeal denied.

## III.   <u>Discussion</u>

### A. <u>Substantial Evidence Review – the Role of this Court</u>

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[69]  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

---

[67] Doc. 1.

[68] Doc. 14.

[69] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

adequate to support a conclusion."[70]    Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[71]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."[72]    However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[73]    The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[74]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to

---

[70] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[71] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[72] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[73] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[74] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

support a conclusion.'"[75]    Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[76]    Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[77]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[78]    Thus, we cannot re-weigh the evidence. Instead, we must determine whether

---

[75] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[76] *Id.*

[77] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[78] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

there is substantial evidence to support the ALJ's findings.  In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.[79]  This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[80]  Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[81]

**B.** <u>Initial Burdens of Proof, Persuasion, and Articulation for the ALJ</u>

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less

---

[79] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).
[80] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[81] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

than 12 months."[82]  This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[83]  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[84]

In making this determination, the ALJ follows a five-step evaluation.[85]  The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[86]

---

[82] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).
[83] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[84] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[85] 20 C.F.R. §§404.1520(a), 416.920(a).
[86] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[87] In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[88] Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[89]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[90] If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform

---

[87] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

[88] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

[89] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

[90] *Mason*, 994 F.2d at 1064.

consistent with the claimant's RFC, age, education, and work experience.[91]

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination.   While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."[92]   Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[93]

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision.   Cases that emphasize the importance of medical opinion support for an RFC assessment typically

---

[91] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

[92] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).

[93] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence.[94]  These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination.  On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[95]   Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[96]

### C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions.

The plaintiff filed this disability application in July of 2019 after Social Security Regulations regarding the consideration of medical opinion evidence were amended.  Prior to March of 2017, the regulations

---

[94] *Biller*, 962 F. Supp. 2d at 778–79.

[95] *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.

[96] *Burns,* 312 F.3d 113.

established a hierarchy of medical opinions, deeming treating sources to be the gold standard. However, in March of 2017, the regulations governing the treatment of medical opinions were amended. Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[97]

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision. Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[98] The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[99]

---

[97] 20 C.F.R. § 404.1520c(c).
[98] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).
[99] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[100]  When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[101]  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[102]  On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[103]

---

[100] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).
[101] *Mason*, 994 F.2d at 1066
[102] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).
[103] *Cummings*, 129 F. Supp. 3d at 214–15.

### D. This Case Will Be Affirmed.

Our review of the ALJ's decision denying an application for benefits is significantly deferential.  Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[104]   Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Hollinger first argues that the ALJ erred by relying on outdated state agency opinions.   She claims new evidence demonstrated a worsening condition of her cervicalgia chronic pain, sacroiliitis, and lumbar spondylosis, which was not present at the time of their assessments.[105]  Hollinger details the evidence as follows:

> Treatment notes following October 2020 document the worsening of Ms. Hollinger's cervicalgia, lumbar spondylosis, and morbid obesity· In October 2020, Ms. Hollinger underwent radiofrequency ablation at C4/5, C5/6, and C6/7 levels on the left. In November 2020, Ms. Hollinger affirmed neck and low back pain. She indicated that while cervical ablation provided some relief but had no relief from sacroiliac

---

[104] *Biestek*, 139 S. Ct. at 1154.
[105] Doc. 14 at 3-7.

23

injections. She exhibited multiple trigger points and diminished patellar reflexes bilaterally. Her pregabalin dosage was increased. In May 2021, Ms. Hollinger underwent lumbar radiofrequency ablation at L3/4, l4/5, and L5/S1 levels on the left. In July 2021, Ms. Hollinger reported bilateral SI joint pain, migraine headaches, and diffuse body aches. She weighed 255 pounds and had a BMI over 48 kg/m2. She was diagnosed with fibromyalgia and morbid obesity. In May 2021, Ms. Hollinger affirmed back pain, sleep difficulties, morning stiffness, and left-hand swelling. She exhibited diminished patellar reflexes, multiple trigger points, knee crepitus, tenderness over SI joints, and positive FABER maneuver. Updated imaging studies and Case 1:24-cv-01833-DFB Document 14 Filed 05/12/25 Page 4 of 21 5 lab work was ordered. Cervical x-ray revealed fusion at C6-7, discogenic disease and body spondylosis at the mid and cervical levels, and facet arthropathy. Lumbar x-ray showed multilevel discogenic disease and bony spondylitic changes. July 2021 pelvic x-ray showed 14 mm focus of increased signal involving the right ilium adjacent to the right SI joint on a single coronal fatsuppressed T2 image. July 2021 sleep study revealed obstructive sleep apnea. In July 2021, Ms. Hollinger underwent cardiac catheterization due to acute chest pain. In July 2021, Ms. Hollinger underwent bilateral SI joint injections which provided relief for 24 hours for bilateral low back pain and buttock pain. In October 2021, Ms. Hollinger underwent right L3-S1 medial branch radiofrequency ablation. Id. Between August 2021 and June 2023, Ms. Hollinger attended physical therapy sessions for cervicalgia and morbid obesity. In February 2022, Ms. Hollinger reported head to toe pain. She had a lot of pain especially in the low back radiating towards the hips and pelvis, with prolonged morning stiffness. Her medications were reviewed. In March 2022, Ms. Hollinger affirmed pain in her neck, back, shoulders, SI joints, and hips, depressed mood, anxiety, and nervousness. She was diagnosed with fibromyalgia and

recurrent major depression. In July 2022, Ms. Hollinger underwent bilateral C507 medial branch radiofrequency ablation. In April 2023, Ms. Hollinger continued to report chronic pain in Case 1:24-cv-01833-DFB Document 14 Filed 05/12/25 Page 5 of 21 6 her neck, low back, hips, left knee, and ankles. She exhibited antalgic gait and pain with cervical and lumbar range of motion. She was diagnosed with chronic pain syndrome, sacroiliitis, and lumbar spondylosis. Radiofrequency ablation was ordered. In June 2023, Ms. Hollinger underwent cervical radiofrequency ablation at C5-6 and C6-7 levels.[106]

"The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."[107] It is "[o]nly where 'additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required."[108] Nevertheless, "where evidence can be read to indicate that a plaintiff's condition deteriorated after the state agency reviewer issued his opinion,

---

[106] Doc. 14 at 4-6.
[107] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).
[108] *Id.* (quoting SSR 96–6p (July 2, 1996) (emphasis added)).

. . . the ALJ's reliance on that opinion [may be] troubling."[109]  Ultimately, an "ALJ's reliance on the opinion of a reviewing consultant who did not have all relevant records requires thorough explanation."[110]

Hollinger cites to a plethora of abnormal treatment records dated after the consultants' findings in arguing that reliance on their opinions was improper.  However, the ALJ considered the findings in the record regarding the claimant's treatment post-dating the consultant's opinions, noting that Hollinger's testing returned normal, she demonstrated full strength in all extremities with little impairment to her reflexes, sensation, and gait, and that she reported improvement with her pain.[111]  Moreover, the ALJ explicitly noted she did not give the medical opinions

---

[109] *Batdorf v. Colvin*, 206 F. Supp. 3d 1012, 1024 (M.D. Pa. 2016) (internal quotations omitted); *see also Garcia v. Dudek*, No. 1:24-CV-00194, 2025 WL 674226, at *9 (M.D. Pa. Mar. 3, 2025) (collecting cases).

[110] *Batdorf*, 206 F. Supp. 3d at 1024–25; *see also Burton v. Kijakazi*, No. 20-196, 2022 WL 125368, at *2 (W.D. Pa. Jan. 13, 2022) ("The ALJ . . . clearly considered the record postdating the consultant's opinion . . . and adequately explained his reasons for accepting or rejecting pertinent parts of the record.).

[111] *See* Tr. 25-26.

any specific or controlling weight prior to considering them.[112] Accordingly, we find no basis for a remand here.

Hollinger also claims the ALJ erred in finding her depression was a non-severe impairment at Step 2. At Step 2, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments.[113] An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities,"[114] or if it is "something beyond 'a slight abnormality which would have no more than a minimal effect on an individual's ability to work.'"[115] This Step 2 inquiry is a de minimis screening device used to

---

[112] Tr. 27; *see also Saeed v. Saul*, No. CV 18-113, 2019 WL 2602143, at *4 (W.D. Pa. June 25, 2019) (finding remand not appropriate on this basis given the ALJ only accorded the state agency consultant's opinion partial weight given their inability to review all treatment records).

[113] *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

[114] 20 C.F.R. 404.1520(c).

[115] *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citations omitted).

cast out meritless claims.[116]  The claimant bears the burden to show that an impairment should be considered severe.[117]

Here, the ALJ adequately explained why she found Hollinger's depression to be a non-severe impairment.  The ALJ detailed the medical record, including the medical opinion evidence, regarding Hollinger's mental health impairments.  The ALJ noted Hollinger's reports of mood swings, depressed moods, and crying spells,[118] but further noted that other than routine and conservative treatment, which caused her symptoms to be well-controlled and stable, the record contains minimal evidence of any impairments to Hollinger's attention, concentration, or memory.[119]  Indeed, the ALJ recognized Hollinger's reported ability to perform a wide range of daily activities and return to school to study criminal justice, evincing her cognitive ability to "concentrate, focus, and remember."[120]  Additionally, the ALJ acknowledged Dr. Haggard's

---

[116] *McCrea*, 370 F.3d at 360; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).
[117] *Bowen*, 482 U.S. at 146; *Stancavage v. Saul*, 469 F. Supp. 3d 311, 331 (M.D. Pa. 2020).
[118] Tr. 24.
[119] Tr. 21-22.
[120] Tr. 22, 26-27.

opinion regarding Hollinger's mental health impairments, which she found was unpersuasive and not supported by the longitudinal record.[121] Ultimately, the ALJ found that Hollinger's depression was non-severe. Given that it is the claimant's burden to prove that an impairment is severe at Step 2, we conclude that the ALJ's Step 2 decision is supported by substantial evidence and does not require a remand.

Hollinger further argues that the jobs of a garment sorter and marker are outdated and obsolete. She claims the job of a marker is "performed differently in today's workforce than described by the . . . [Dictionary of Occupational Titles ("DOT")]" and is "performed at the semiskilled to skilled levels" according to the Occupational Information Network ("O*NET").[122]   Moreover, she claims the closest comparable job to a garment sorter on O*NET is "51-9190.00—Helpers-Production Workers," which indicates a specific vocational preparation of 4 to < 6.[123] However, courts in our circuit "have been hesitant to reject the testimony of Vocational Experts relying upon the DOT in favor of the descriptions

---

[121] Tr. 27-28.
[122] Doc. 14 at 11.
[123] *Id.*

29

on O*NET, given the fact that 'Social Security Ruling 00-4P sets forth that the relevant inquiry is whether VE testimony is consistent with the DOT.'"[124] "[T]he regulations simply do not require a [Vocational Expert's] testimony to be consistent with O*Net."[125] We agree with this body of caselaw and conclude that the ALJ fulfilled her requirement under the controlling regulations.

Lastly, Hollinger challenges the ALJ's assessment of her obesity. She argues that the ALJ failed to include analysis of the cumulative impact of obesity and other impairments, and failed to consider SSR 19-2p, which discusses postural limitations in the context of obesity. Specifically, she alleges that the ALJ did not adequately explain how her obesity was considered in combination with cervicalgia, lumbar spondylosis, chronic pain syndrome, and sleep apnea.[126]

Under the agency's regulations, the ALJ must analyze the effects of a claimant's obesity on his or her ability to function.[127] This is

---

[124] *Pollock v. O'Malley*, No. 1:22-cv-1856, 2024 WL 4803530, at *19 (M.D. Pa. Nov. 15, 2024) (collecting cases).

[125] *Id.* at *20.

[126] Doc. 14 at 14-15.

[127] *See* SSR 02-01p, SSR 00-3p.

particularly so when the ALJ identifies the claimant's obesity as a severe impairment at Step 2.[128]  The Third Circuit has explained that the ALJ need not "use particular language or adhere to a particular format in conducting his analysis" of a claimant's obesity.[129]  Rather, so long as the ALJ "meaningfully consider[s] the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step[,]"[130] a remand is not required.[131]

Here, the ALJ acknowledged obesity as a severe impairment and discussed this impairment at Step 3, explicitly noting that she considered SSR 19-2p regarding the claimant's obesity and any impact it has on her other impairments in determining whether it met or medically equaled a listing.[132]  Further, in determining Hollinger's RFC, the ALJ recounted the medical records that documented Hollinger's obesity in her discussion

---

[128] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).
[129] *Diaz*, 577 F.3d at 504 (citations omitted).
[130] *Id.* at 504.
[131] *See Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765 (3d Cir. 2016); *Cooper v. Comm'r of Soc. Sec.*, 563 F. App'x 904, 911 (3d Cir. 2014).
[132] Tr. 23.

of medical evidence, referring to Hollinger's body mass index of 39.5 during the relevant period.[133] This evidence was discussed in conjunction with the claimant's physical examination findings, both normal and abnormal, during the relevant period.[134] These references are sufficient to evince consideration of obesity in combination with other impairments, and of obesity's relationship to possible postural limitations. Thus, we conclude there was no error in the ALJ's treatment of obesity.

Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case, and this decision should be affirmed.

---

[133] Tr. 25.
[134] Tr. 24-27.

## IV.   <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner in this case will be AFFIRMED, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 17th day of February 2026.


<u>*s/ Daryl F. Bloom*</u>
Daryl F. Bloom
Chief United States Magistrate Judge